[Civ. No. 30831. First Dist., Div. One. June 20, 1972.]

HOLLISTER CANNING COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN BENITO COUNTY, Respondent;
JAMES E. SWETT, Real Party in Interest.

## COUNSEL

Wyckoff, Parker, Boyle & Pope and Charles E. Finney for Petitioner.

No appearance for Respondent.

Crimmins, Kent, Bradley, Burns & Kaplan and Robert W. Williams for Real Party in Interest.

## OPINION

**SIMS, J.**—By its petition for writ of mandate and/or in the alternative writ of prohibition, the Hollister Canning Company sought an order staying proceedings in an action pending in the trial court until a peremptory writ could be granted herein ordering that court to set aside its order which granted the motion to strike the complaint as to the defendant "JAMES E. SWETT doing business as GEORGE E. SWETT COMPANY," who, the order recites, was served as "THIRD DOE" in the proceedings below, and further ordering the trial court to subject "JAMES E. SWETT, an individual doing business as GEORGE E. SWETT & Co.," who was in fact served as "THIRD DOE," to the jurisdiction of that court in the pending action. After this court granted a temporary stay the real party in interest filed his memorandum of points and authorities in opposition to the petition (see Cal. Rules of Court, rule 56(b)), in which he urged, first, that the petitioner had an adequate remedy of law because its motion to amend the complaint by substituting real party in interest for "GEORGE E. SWETT Co., a corporation," as named in the complaint, was pending and undisposed of in the trial court, and, secondly, because the trial court correctly determined the motion. Nevertheless because the complexities of the case made it impossible to determine whether the suggested remedy would be adequate, and because it appeared that the court had erroneously stricken the complaint as to real party in interest, an alternative writ was issued to stay proceedings until and unless good cause was shown why the relief sought by petitioner should not be granted. In his return to the alternative writ real party in interest renewed his former contentions, and for the first time asserted that petitioner was not entitled to relief because it had an adequate remedy by appealing from the trial court's order and because the service of process on real party in interest was barred by laches.

It is concluded that the alternative writ may have been improvidently granted because the petitioner had the remedy of appealing from the order,

but, because the matter has been fully briefed and argued, it should be disposed of on the merits in these proceedings. It is determined that the trial court erred in granting the motion, that the alleged alternative remedy by amendment would pose the same issues as presented by the order and lead to further litigation, and that petitioner was not barred from serving real party in interest by laches.

The record in this case consists not only of the petition, real party's opposition, his return, and a replication and demurrer to the return, but also of copies of numerous pleadings, motions and declarations which were filed in the trial court, and which copies have been made exhibits to the papers filed herein. From these documents the following facts appear.

On March 6, 1969 petitioner filed its complaint and in the caption named as defendants, "L & A ENGINEERING AND EQUIPMENT, INC., a corporation, SKINNER ENGINEERING Co., a corporation; GEORGE E. SWETT Co., a corporation, FIRST DOE, SECOND DOE and THIRD DOE." The complaint, in three counts, is for damages occasioned by the breakdown of certain evaporating equipment for processing of tomatoes and other vegetables. These damages are apparently sought against all of the defendants in the first count on the theory that the equipment was negligently manufactured, installed and inspected. In two further counts, not material to these proceedings, petitioner seeks damages for breach of an express warranty and for breach of an implied warranty against the first named defendant, with whom it contracted for the installation of the equipment.

The complaint alleges that on January 20, 1967 petitioner accepted the written proposal of the defendant engineering and equipment corporation to furnish and install the desired equipment. According to the cross-complaint of that defendant, some of the necessary evaporating and processing equipment was secured from others who are named as codefendants and certain fictitious defendants, and the equipment was installed by them in July 1967. In a declaration dated December 10, 1971, a copy of which is appended to his return in these proceedings, real party in interest alleged that his employee, on behalf of defendant Skinner, sold a steam turbine, which became part of the evaporating unit in question, to the defendant engineering corporation in January 1967, and that his employee and he himself met with petitioner's employees in September and October 1967 at petitioner's plant concerning the installation of the equipment.

According to the complaint the damage occurred when the equipment broke down on September 15, 1967, about 10 days after operations commenced, and plaintiff suffered a loss of profits of $54,279.66 before the equipment was again fully operating about October 5, 1967.

Summons was first issued on March 6, 1969. Swett's declaration, referred to above, states he was served on March 29, 1969 with a copy of the summons and complaint on behalf of "George E. Swett Co., a corporation." According to the declaration of one of petitioner's attorneys, which, together with other exhibits, was made a part of the opposition filed by real party in interest, that attorney forwarded a copy of the summons and complaint to the Sheriff of the City and County of San Francisco on April 17, 1969 for service on "defendant George E. Swett and Company," with a request that the sheriff ascertain "if it is a corporation or an individual operation." A copy of the returned summons indicates service was made on April 28, 1969 on "George E. Swett Co. by leaving with James Swett, a sole proprietorship."

Thereafter Swett's personal attorneys, who appear for him in these proceedings,[1] wrote petitioner's attorneys to confirm that the latter had extended to June 29, 1969 the time to plead of "Jim Swett dba George E. Swett Co." A declaration of that attorney reflects that he wrote to Swett's insurer on June 13, 1969 demanding that it undertake his defense.

Thereafter, on August 28, 1969, attorneys, one of whom subsequently acknowledged in open court that he represented the insurer of James E. Swett as an individual, served and filed an answer on behalf of "GEORGE E. SWETT COMPANY, a corporation," in which the corporation denied all the allegations of the complaint, and set up the defenses of contributory negligence and assumption of risk.

On January 14, 1970 the defendant Skinner Engineering Co. filed its answer in which it asserted similar defenses. On April 7, 1970 the engineering and equipment corporation filed its answer in which it denied the material allegations of the complaint and interposed defenses of contributory negligence and unavoidable accident. It also cross-complained against the named and fictitious codefendants for indemnity because they had furnished the equipment in question.

On February 4, 1971 petitioner's attorneys took Swett's deposition as custodian of the records of "George E. Swett & Co., a corporation." The record does not indicate what information was revealed as a result of that deposition.

On February 18, 1971, Pump Repair Service, Inc., a corporation, which

---

[1] As related below the attorneys for Swett's insurer secured the order that is reviewed in these proceedings. Although they have been served with copies of the petition, of the opposition filed by Swett's personal attorneys, of the return, and of petitioner's replication and demurrer to the return, they have not appeared herein.

had been served as "DOE ONE," and David J. Archer, Jr., served as "DOE TWO" filed their joint answer and cross-complaint. The answer generally denied the allegations of the complaint and affirmatively set up contributory negligence and assumption of risk. By their cross-complaint those defendants sought indemnity against Skinner corporation, against the engineering and equipment corporation, and against fictitious defendants.

On April 5, 1971 attorneys for Swett's insurer moved to withdraw as counsel for real party in interest and the following day an order was entered permitting that law firm to withdraw and Swett was substituted to represent himself in propria persona. Apparently he had been served, as a fictitious defendant, with the cross-complaint of Pump Repair et al. because he individually, and with the assistance of his personal attorneys, sought a continuance of the former's motion for summary judgment which had been set for May 4, 1971. Significantly in a declaration Swett executed on April 29, 1971, he referred to himself as "one of the defendants . . . in the above-entitled action."

According to Swett, his deposition was again taken by petitioner's attorneys on April 7, 1971. Petitioner's attorney has alleged that the second deposition was taken on May 21, 1971. At the later deposition it was determined that Swett was acting as a sole proprietorship, and petitioner's attorney discussed the matter with the insurer's attorneys. He sought to induce the latter to stipulate to a substitution of the individual for the corporation and prepared a stipulation to that effect and submitted it to the attorneys who had appeared for the nonexistent corporation. They indicated they would submit it to Swett. It was never executed.

On November 10, 1971 a summons which had been issued January 1971, together with a copy of the complaint, was served on "JAMES E. SWETT, individually and doing business as GEORGE E. SWETT & Co., sued and served herein as THIRD DOE." Thereafter the insurer's attorneys again appeared in the action as attorneys for "GEORGE E. SWETT COMPANY, a corporation," according to the caption of the notice of motion to strike filed November 22, 1971. The intended motion, however, was made for "defendant, JAMES E. SWETT doing business as GEORGE E. SWETT COMPANY, sued and served herein as THIRD DOE." So it must be assumed it referred to real party in interest as served on November 10, 1971.

It is clear from the record that there never has been an entity designated as "GEORGE E. SWETT Co., a corporation." A corporation designated as "GEORGE E. SWETT & Co., ENGINEERS, INC." was suspended on September 1, 1959. In a declaration executed November 26, 1971 Swett alleged, "That ever since September 1, 1959, I have been the owner and manager

of the business known as George E. Swett & Company and I conducted that business individually, not as a corporation, under that name; that the corporation with suspended powers did not operate or function after said date." Similar allegations are found in his declaration of December 10, 1971.

On November 30, 1971 the trial court gave notice of a settlement conference and pretrial conference to be held January 4, 1972. On the same day the motion to strike came on for hearing, and on December 3, 1971 the court made the order under review. On December 10, 1971 petitioner prepared and served by mail its notice of motion to amend the complaint. This motion originally set for December 21, 1971 was continued to January 4, 1972 at the request of the attorneys for real party in interest, and further action has been suspended by the stay granted in these proceedings following the filing of petitioner's petition with this court on December 30, 1971.

I

In his return real party in interest belatedly, but correctly, points out that since the order granting the motion to strike the complaint was a final determination of the controversy between him and petitioner it was appealable as a final judgment. In *Adohr Milk Farms, Inc.* v. *Love* (1967) 255 Cal.App.2d 366 [63 Cal.Rptr. 123], the court concluded, "An order granting a motion to strike the complaint would operate to remove from the case the only cause of action alleged against the defendants, and to leave no issues to be determined between the opposing parties. Treated as such, the order before us is appealable within the meaning of subdivision 1 of section 963 of the Code of Civil Procedure. [Citations.]" (255 Cal.App.2d at p. 370. See also *Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 677 [268 P.2d 1062]; *Muller* v. *Tanner* (1969) 2 Cal.App.3d 438, 440 [82 Cal.Rptr. 734]; and *American Can Co.* v. *City & County of San Francisco* (1962) 202 Cal.App.2d 520, 522 [21 Cal.Rptr. 33].)

The Code of Civil Procedure provides for issuance of a writ of mandate or writ of prohibition upon an appropriate showing "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (§§ 1086 and 1103.) In commenting on section 1086 in *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363 [217 P.2d 951], the court observed: "Although the statute does not expressly forbid the issuance of the writ if another adequate remedy exists, it has long been established as a general rule that the writ will not be issued if another such remedy was available to the petitioner. [Citations.] The burden, of course, is on the petitioner to show that he did not have such a remedy." (35 Cal.2d at p. 366.) After

determining that the order which he sought to have ordered stricken was appealable, the court concluded, "Where an order is not appealable, but is reviewable only upon such appeal from a subsequent judgment, various factors, such as expense of proceeding with a trial and prejudice resulting from delay, may operate to make that remedy inadequate. Where, however, as here, there is a right to an immediate review by appeal, that remedy is almost as speedy as a writ proceeding, under present practice, and should be considered adequate unless petitioner can show some special reason why it is rendered inadequate by the particular circumstances of his case." (*Id.*, p. 370, fn. omitted. See also *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338, 342 [316 P.2d 960]; *Financial Indem. Co.* v. *Superior Court* (1955) 45 Cal.2d 395, 399 [289 P.2d 233]; *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 581-582 [283 P.2d 704]; *Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304, 311 [139 P.2d 13]; and 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 22, 46-48 and 101, pp. 3796-3797, 3820-3822 and 3875-3876.)

On the other hand in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379 [218 P.2d 10] the following principles were recognized, "The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction and that mandate may be used to compel the performance of this duty. This is so even where the trial court's refusal to pass on the merits is based on the considered but erroneous belief that it has no jurisdiction as a matter of law to grant the relief requested. . . . Mandate will issue to compel a hearing and determination of the merits where the court has merely sustained an objection on jurisdictional grounds and left the proceeding pending. [Citations.] The writ is also available where the trial court has disposed of a matter by an order dismissing it or denying relief on the sole ground of lack of jurisdiction. [Citations.] Thus, there is no distinction, insofar as the availability of the writ is concerned, between cases where the court merely refuses to proceed because of its erroneous belief that it has no jurisdiction, and those in which the court makes a ruling disposing of the matter on the sole ground it has no jurisdiction. In either case if the effect is to preclude a hearing and judgment on the merits of a matter properly before the court, and there is no other adequate remedy, mandate will lie to test the question of jurisdiction." (35 Cal.2d at pp. 383-384. See also *Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 514-515 [96 Cal.Rptr. 584, 487 P.2d 1224]; *Weber* v. *Superior Court* (1960) 53 Cal.2d 403, 406 [2 Cal.Rptr. 9, 348 P.2d 572]; *Financial Indem. Co.* v. *Superior Court, supra,* 45 Cal.2d 395, 399-400; and 5 Witkin, *op. cit.,* §§ 83 and 105, pp. 3858-3859 and 3880. Cf. *Lincoln* v. *Superior Court, supra,* 22 Cal.2d 304, 309-310 and 311-315.)

As a corollary of the foregoing principle it has been said, "Where it appears that the trial court has made a ruling which deprives a party of the opportunity to plead his cause of action or defense, relief by mandamus may be appropriate to prevent a needless and expensive trial and reversal. [Citations.]" (*Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238, 251 [28 Cal.Rptr. 548]. See also *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 301, fn. 4 [90 Cal.Rptr. 345, 475 P.2d 441]; *Souza & McCue Constr. Co.* v. *Superior Court* (1962) 57 Cal.2d 508-512 [20 Cal.Rptr. 634, 370 P.2d 338]; and *Carter* v. *Superior Court* (1956) 142 Cal.App.2d 350, 359-360 [298 P.2d 598]. Cf. *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

■ The circumstances suggest that the remedy by appeal would not afford petitioner a plain, speedy and adequate remedy because success would necessitate a retrial of issues which are now pending against other defendants. It is unnecessary to determine whether they are such as to fall within the orbit of the principles expounded in the latter cases. It does appear that the alternative writ was issued without objection noting the adequacy of the remedy by appeal. The merits of the controversy have been fully briefed and submitted to the court. Under these circumstances the issue may be disposed of on the merits. In *County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545 [94 Cal.Rptr. 158, 483 P.2d 774] the court noted, "Although we have held in this opinion that a writ of prohibition may not be appropriate to review that order, the merits of the superior court order have been thoroughly briefed and argued both before this court and the Court of Appeal. We believe that we should now adjudicate the merits, since a refusal to do so would leave the parties and the trial court without guidance and would serve no purpose but delay." (4 Cal.3d at pp. 551-552, fn. omitted. In addition to the cases referred to by the court in the footnote, see *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170-171 [84 Cal.Rptr. 718, 465 P.2d 854]; *Atkinson* v. *Superior Court, supra,* 49 Cal.2d 338, 342; *Bowles* v. *Superior Court, supra,* 44 Cal.2d 574, 582; *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 483-484 [171 P.2d 21, 166 A.L.R. 701]; and 5 Witkin, *op. cit.,* §§ 44, 45 and 94, pp. 3817-3820 and 3869-3870.)

## II

■ The caption of the complaint which names "THIRD DOE" as a defendant has been set forth above. The complaint alleges, [¶] "II. Defendants L & A ENGINEERING AND EQUIPMENT CO. (hereinafter referred to as L & A ENGINEERING), SKINNER ENGINEERING CO., (hereinafter referred to as SKINNER), and GEORGE E. SWETT CO., (hereinafter referred to as

SWETT), are and at all times herein mentioned and each of them have been corporations"; and [¶] "III. The true names and capacities of FIRST DOE, SECOND DOE and THIRD DOE are unknown to plaintiff." Paragraph "IV" refers to the written contract with the engineering and equipment corporation, a copy of which is appended to the complaint. The next paragraph alleges: "V. As a part of and incidental to that agreement and for valuable consideration defendants SWETT and SKINNER orally agreed to participate in that installation of processing equipment with defendant L & A ENGINEERING and to inspect the installation of a certain generator and governor, manufactured by SKINNER and to be installed as a component part of the machinery installed by and sold to L & A ENGINEERING under the contract, Exhibit A."

The charging paragraphs read, "VI. Defendants, and each of them, negligently manufactured, assembled, installed and inspected the vegetable processing equipment agreed so to be installed under the terms of Exhibit A"; and "VII. As a proximate result of defendants' negligence, the processing equipment installed by defendants and purchased by plaintiff broke down and became inoperative on about September 15, 1967, . . ." Paragraph "VIII" sets forth the petitioner's damages and the prayer is for recovery "against defendants."

In *Milam* v. *Dickman Construction Co.* (1964) 229 Cal.App.2d 208 [40 Cal.Rptr. 130] the court determined that the complaint did not state a cause of action against any fictitious defendant. It concluded, "It is apparent that the 'Defendants' referred to are the two named defendants against whom the acts of negligence are specifically directed. [¶] The complaint having failed to state a cause of action against the fictitious defendants, the statute of limitations is not tolled as to them by the filing of the complaint." (229 Cal.App.2d at p. 214. See also *Schroeter* v. *Lowers* (1968) 260 Cal.App.2d 695, 700-701 [67 Cal.Rptr. 270]; *Williams* v. *Goodman* (1963) 214 Cal.App.2d 856, 861-862 [29 Cal.Rptr. 877]; *Thompson* v. *Palmer Corporation* (1956) 138 Cal.App.2d 387, 396 [291 P.2d 995]; and *Sullivan* v. *Wright* (1954) 124 Cal.App.2d 836, 838 [269 P.2d 671].)

In reliance on the principles set forth in the foregoing decision, the attorneys for Swett's insurer interposed the motion to strike "on the grounds that said defendant was served as DOE defendant; that the charging allegations contained in plaintiff's complaint do not refer to any of the DOE defendants and fails to state a cause of action against same. Further, that by reason of the failure to state a cause of action against the fictitious defendants, the statute of limitations is not tolled, but has continued to run. That by reason of the running of the statute of limitations, the plaintiff is barred from now instituting action against this defendant."

A comparison of the pleadings in this case with the pleadings reviewed in *Milam* reveals that the decision relied upon is not controlling. In *Milam* the court referred to the charging allegations as follows: ". . . *all* of the charging allegations are contained in paragraph VII of the complaint and refer *only* to the construction company and the garbage company. These allegations are as follows: 'That on or about the 6th day of August, 1961, at said premises, Defendant DICKMAN CONSTRUCTION COMPANY negligently and carelessly controlled and maintained said premises, and Defendant DICKMAN CONSTRUCTION COMPANY and Defendant MOUNTAIN VIEW GARBAGE COMPANY further negligently and carelessly caused an unsafe and unfit garbage container to be provided and maintained for the use of the plaintiff in that said container required the user to balance herself on a small ledge protruding from the side of said container and was without benefit of any guard or safety device. As a proximate result of said negligence of Defendants and each of them, Plaintiff was caused to fall as she was in the process of dumping garbage into said container; and, thereby, Plaintiff hit and struck the pavement; and, thereby, proximately sustained the injuries and damages herein set forth.' [¶] Immediately thereafter is the further allegation 'That as a direct and proximate result of the carelessness and negligence of Defendants and each of them as aforesaid' plaintiff sustained injuries." (229 Cal.App.2d at pp. 213-214.)

In this case the petitioner in paragraphs "IV" and "V" of its complaint has set forth allegations which establish a relationship between it and certain named defendants which would give rise to a duty of care running from those defendants to the petitioner. The relationship between the petitioner and the fictitious defendants is not stated. Nevertheless it should not be foreclosed from bringing in those whom it subsequently has discovered had a part in performing the obligations undertaken by the named defendants. The charging allegations, paragraphs "VI" and "VII" use the unqualified words "Defendants" and "defendants'." Any reading of those paragraphs requires that the names of each and all of the defendants named in the caption, "THIRD DOE," be considered as embraced in their content. (See *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 252 [73 Cal. Rptr. 127].) Such a reading is impossible in *Milam* because not only are the negligent acts and omissions specifically attributed to named defendants, but also the allegations of proximate cause are related to the "aforesaid" acts and omissions of the specific defendants.

If there is any shortcoming in setting forth the relationship under which any fictitious defendant undertook a duty toward petitioner, it should be the subject of special demurrer, and is not fatal to the statement of a cause

of action. The trial court erred in granting the motion on the grounds set forth therein.

## III

Petitioner objects to the attempt of real party in interest to bring before this court matters which were only presented to the trial court in proceedings initiated after the making of the order of December 3, 1971. This court has referred to the material (found as exhibits to petitioner's December 10, 1971 motion to amend, which itself was an exhibit to the opposition filed by real party in interest) because for the most part it embodies matters which were part of the records of the court on and before the motion to strike was heard on November 30, 1971.

It is obvious that the issues presented by petitioner's motion to amend parallel those in the pending proceedings. (See *Schroeter* v. *Lowers, supra,* 260 Cal.App.2d at p. 701; and *Thompson* v. *Palmer Corporation, supra,* 138 Cal.App.2d at pp. 395-396.) It is true that if it were granted it would render the present proceedings moot, but it could and would not finally resolve, until after final judgment, the issue of whether real party in interest was properly made a party at this late date, much less the latent and undiscussed issue of whether he has been a party, although not appearing as such since the service effected on April 17, 1969. On the other hand if that motion were to be denied, as the trial court if consistent might well conclude, the petitioner would be left with an application for extraordinary relief or an appeal which would raise issues similar to those presented by the parties in this proceeding.

It is unnecessary to determine the merits of petitioner's pending motion, or whether or not it ordinarily would furnish an adequate remedy at law which would substitute for review of the order which has been made. The granting of the relief sought by petitioner will render the second motion moot and enable the parties to proceed to a determination of the merits of the controversy free from lurking procedural issues, and from defenses not pertinent to the merits. On the record in this case the administration of justice requires no less. Under the circumstances presented the pending motion to amend cannot serve as a substitute for review of the order which had been made.

## IV

In his return real party in interest asserts that he should not be sued in this action as a fictitiously named defendant because petitioner knew

his true name, and should have ascertained, through the exercise of minimal diligence, his true capacity. Code of Civil Procedure section 474 provides in pertinent part, *"When the plaintiff is ignorant of the name of a defendant . . .* such defendant may be designated . . . by any name. . . ."* (Italics added.) "This lack of knowledge of the true name of a defendant must be real and not feigned, and must not be wilful ignorance, or such as might be removed by some inquiry or resort to information easily accessible. [Citations.]" (*Schroeter* v. *Lowers, supra,* 260 Cal.App.2d 695, 700. See also *Nissan* v. *Barton* (1970) 4 Cal.App.3d 76, 79-80 [84 Cal.Rptr. 36]; and *Stephens* v. *Berry* (1967) 249 Cal.App.2d 474, 477 [57 Cal.Rptr. 505].)

It is undoubtedly correct that the petitioner, through its employees, knew James E. Swett, who appeared at its plant in connection with the installation and inspection of the equipment, and that it was not ignorant of his true name. Nevertheless, there is nothing to show that the petitioner knew in what capacity Swett was rendering services in connection with that work. The ignorance of the capacity of the real party responsible is sufficient to permit substitution of such real party as a fictitious defendant under the provisions of section 474. (*Oakes* v. *McCarthy Co., supra,* 267 Cal.App.2d 231, 253.)

The same record which reveals that petitioner was not ignorant of the name of the real party in interest reflects that real party, by his own admission, was aware of the pending litigation since March 29, 1969 when he was served on behalf of the nonexistent corporation. It would be a miscarriage of justice to permit real party in interest and his insurer to escape accountability in the pending proceeding when the attorneys furnished by the insurer appeared for the true fictitious defendant, the nonexistent corporation, and then, after the period of limitations had run, withdraw from the case. This is not to say that there was a duty on anyone to appear for Swett individually,[2] or to advise the petitioner of his true capacity, it is only to hold that under the circumstances of this case real party in interest is not in a position to object to being brought in as a fictitious defendant.

Let a peremptory writ of mandate issue directing the trial court to set aside its order of December 3, 1971 which struck the complaint in its action number 7996, as to the defendant James E. Swett, an individual doing

---

[2]No determination is made as to whether the alleged service of April 17, 1969, was effective to give jurisdiction over Swett individually.

business as George E. Swett & Co., and ordering said court to subject said defendant to its jurisdiction for further proceedings in the pending action.

Molinari, P. J., and Elkington, J., concurred.