[Civ. No. 11870.   Second Appellate District, Division Two.—July 1, 1938.]

In the Matter of the Estate of THOMAS M. BARROW, Deceased.   VICTOR H. KENDRICK, as Executor, etc., et al., Appellants, v. MINNIE W. BARROW, Respondent.

Victor H. Kendrick for Appellants.

C. Hughes Jordan and James T. Boyle for Respondent.

WOOD, J.—The petitioner, Minnie W. Barrow, widow of Thomas M. Barrow, deceased, filed in the probate court a petition for a family allowance and for cancellation of a property settlement agreement made by petitioner and Thomas M. Barrow during his lifetime. The petition was opposed by the executor of the will of Thomas M. Barrow and by Frank E. Barrow, a son by a previous marriage. The executor and the son have appealed from the orders granting the petition.

In the property settlement agreement petitioner waived various rights, among them the right to a family allowance. The trial court found that decedent induced petitioner to make the agreement by falsely and fraudulently promising and representing to petitioner that he would make a will leaving all his property in equal shares to Frank E. Barrow, the son of decedent, and to Jean Barrow Way, the daughter of petitioner and decedent; that petitioner believed said promise and relied upon it and was thereby induced to execute the agreement; that decedent did not have any intention at the time the promise was made of performing it; that the promise was made with the intent and for the purpose of deceiving and defrauding petitioner. Appellants now contend that these findings are without support in the evidence.

Petitioner and decedent were married in 1905, at which time each owned separate property and decedent earned a salary from his employment in the postal service. Decedent managed the property of both parties until 1919, when petitioner assumed the management of her own property. Thereafter each party acquired certain additional properties and together accumulated certain community property. Decedent

became ill with tuberculosis which caused his retirement from the postal service with a pension of $60 a month. Negotiations were conducted for a formal property settlement and on August 15, 1934, a discussion took place between the parties and their daughter Jean. Petitioner asked decedent to pay her the sum of $5,000 but decedent offered the sum of $3,500 in settlement. What took place is related by the daughter: ''Well, I came home from school—it was one day during the week—and, so, the subject of the property settlement came up—my father was very, oh, despondent about these people downstairs moving, and he says, 'I am going to board up the house, I want peace and quiet around here, and I would like to be left entirely alone;' and he says, 'I wish you folks would get out.' And mother said, 'Well, I will if you will give me what I have asked for.' He says, 'Well, what do you want?' She said, 'I would like to have $5,000;' and he said, 'Oh, hell;' he says 'I haven't got it;' and I said to my father, 'I should think you would be only too glad to give mother what she asks for, all the things she has done for you, you wouldn't be here now if you had not had help.' He said, 'Jean, you remember this agreement is only between your mother and me.' So then I spoke up to my father, and I said, 'Well, what about other things you have besides this house?' I says, 'You have your savings account, you have the rent from the house downstairs and your garage and your pension.' And so, he said, 'Well, I don't know how long I am going to live or how much my expenses will be; I may have to have nurses and doctors,' but he says, 'If I have anything left I am going to divide it between Frank and you.' He said, 'I don't want to show any partiality.' Then mother spoke up and she said, 'That is fair; if you don't like that I will be willing to split the difference with you and take $3,750.' My father said 'All right.' So that ended that conversation.'' Petitioner presented a witness who testified decedent had told her that he had concealed certain property from petitioner and that she would not have signed the agreement if she had known of the concealed property.

A formal property settlement agreement was prepared by decedent's attorney and the agreement was signed in the attorney's office on September 24, 1934. The executed copies of the agreement were retained by the attorney until October 9, 1934, at which time decedent paid to petitioner the balance

of the money due her under the terms of the agreement. On October 9, 1934, decedent made a will leaving all of his property to his son. He was ill all the time thereafter and died on December 6, 1935.

The record discloses sufficient evidence to sustain the court's findings. It is the province of the trial court to draw inferences from the evidence and from the facts established by the evidence. If inferences supporting the judgment may be drawn from the facts established the reviewing court may not draw inferences contrary to those drawn by the trial court. (*Paine* v. *San Bernardino etc. Co.,* 143 Cal. 654 [77 Pac. 659].) ▇ Fraud may be proven by circumstantial evidence. An intention not to perform a promise may be inferred from the facts proven. The conduct of the promisor subsequent to the making of the promise may be proved to show that there was no intention of performing the promise at the time it was made. Direct evidence of a secret intention on the part of the promisor not to perform the promise is not necessary but the question of the actual intent of the promisor at the time he made the promise is to be determined by the trial court from all the facts and circumstances shown in evidence. (*Holiday* v. *Tolosano,* 39 Cal. App. 151 [178 Pac. 170] ; *Tench* v. *McMeekan,* 17 Cal. App. 14 [118 Pac. 476, 478] ; *Snyder* v. *City Bond & Finance Co.,* 106 Cal. App. 745 [289 Pac. 859] ; *Williams* v. *Hasshagen,* 166 Cal. 386 [137 Pac. 9].) In *Wilson* v. *Rigali & Veselich,* 138 Cal. App. 760, 765 [33 Pac. (2d) 455], the court said: "Without the consideration of other evidence, the subsequent failure to perform warrants the inference that appellants did not intend to perform when they promised." The evidence shows that petitioner and decedent were bargaining on the subject of a property settlement and that petitioner agreed to accept $1250 less than she had demanded upon decedent's promise to divide his property equally between his son and daughter. In reliance upon that promise petitioner signed the property settlement whereby she waived her rights to a family allowance. Decedent at that time was over seventy years of age and was suffering from a chronic illness. His expectancy of living was more uncertain than that of the average person. Notwithstanding, he made a will leaving his property to his son to the exclusion of his daughter on the very day the property settlement transaction was completed. Since, according

to the supported findings, the property settlement was executed in reliance upon a promise made with intent to deceive, which the promisor had at the time of its making no intention to perform, the trial court was justified in setting it aside.

The appellants contend that petitioner did not make a sufficient offer to restore. The offer to restore was made in the language of section 1691 of the Civil Code. It was shown by the evidence that petitioner had used the sum of $546.50 for living expenses during the separation of the parties and prior to decedent's death and was unable to restore the full amount received by the property settlement. She did restore by a deposit with the clerk the sum of $3,203.50. The answer to appellants' contention is to be found in the following quotation from *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73, 83 [227 Pac. 715] : ''It is not an invariable rule that a rescission of a contract on the ground of fraud will be denied merely because the parties cannot be placed *in statu quo*. (*Green* v. *Duvergey*, 146 Cal. 379 [80 Pac. 234].) It would be manifestly unjust to require of the wife, as a prerequisite to maintaining an action to rescind a property settlement agreement on the ground of fraud, that she restore to the husband the moneys received by her under the agreement and used for living expenses and to which under the law she would have been entitled to so receive and use notwithstanding the agreement. (*Milekovich* v. *Quinn*, 40 Cal. App. 537 [181 Pac. 256].) ''

The orders are affirmed.

Crail, P. J., and McComb, J., concurred.