[Civ. No. 6990.   Third Dist.   Nov. 24, 1943.]

I. W. FEWELL, Respondent, v. H. SHAMGOCHIAN et al., Appellants.

Stephen P. Galvin for Appellants.

Gilbert Moody for Respondent.

ADAMS, P. J.—After trial of the above entitled action by the court sitting without a jury, the court found "that M. Shamgochian and H. Shamgochian sold to I. W. Fewell a certain crop of grapes for the sum of $350.00, which sum was paid by the purchaser; that said crop was harvested by I. W. Fewell and was delivered to K. Arakelian, Inc., for an agreed price in the sum of $1,178.56. K. Arakelian, Inc., refused to make payment to I. W. Fewell because of a claimed interest by the Shamgochians. I. W. Fewell demanded of the Shamgochians that the said sum of $1,178.56 be released to him, but such release was refused. That in an effort to collect the money properly due him, I. W. Fewell made two trips to Madera from his home at Livingston, California, was obliged to commence an action in the Superior Court in and for the County of Stanislaus, State of California, for the recovery of said money, and thereby incurred attorney's fees and court costs and said sum of $1,178.56 was withheld from him to his further damage. The Court finds that the total damage suffered by said I. W. Fewell by reason of the unlawful actions of the Shamgochians is the sum of $100.00."

Judgment was entered accordingly and defendants have appealed, the sole question presented being the sufficiency of the evidence to sustain the finding that K. Arakelian, Inc., refused to make payment to plaintiff because of a claimed interest by the Shamgochians, it being argued that there is no evidence to sustain the finding, and, therefore, no justification for the award to plaintiff of damages because of acts of defendants.

The evidence in the case establishes that H. Shamgochian, the son of M. Shamgochian, owned a crop of grapes; that as he was about to be inducted into the military service he sought to sell said grapes on the vine to plaintiff Fewell; that plaintiff, after some negotiations with both defendants, finally agreed to buy said grapes for $350; that the younger

Shamgochian in his father's presence instructed plaintiff to deal with his father and that plaintiff paid to the father, M. Shamgochian, the sum of $350 and received from him a receipt "in full payment of Tokay grapes on vines." H. Shamgochian had, in the meantime, secured the K. Arakelian, Inc., winery to take the grapes when harvested, at an agreed price per ton; and on harvesting them plaintiff delivered them to Arakelian, stating that he had bought them and was delivering them under the contract, and presenting the receipt executed by M. Shamgochian as evidence of his ownership. The evidence also shows that while plaintiff was still harvesting the crop M. Shamgochian called upon plaintiff and made a demand for more money, which plaintiff declined to pay, and that after plaintiff had delivered the grapes to Arakelian the latter refused to make payment to plaintiff without a release from Shamgochian, which release the latter refused to give. Plaintiff thereupon filed suit against Arakelian for the purchase price of the grapes, and also commenced a suit against M. Shamgochian for damages, including the purchase price of the grapes.

At the trial plaintiff called as his witnesses Y. B. Torosian, buyer for Arakelian, Inc., who had made the contract with H. Shamgochian. Though this witness had written a letter to K. Arakelian to hold up payment for the grapes delivered by plaintiff he denied that he had talked with or seen M. Shamgochian after the contract was signed or that he had talked to him by telephone or received any letter from him. Plaintiff also called William Sublette, manager for the Arakelian winery, who testified to the receipt of the grapes from Fewell, and his refusal to pay for them. When asked why he did not make payment he said: "A. Well, it seemed that there was some sort of a controversy as to whose grapes were being delivered there and until we could get it settled we held up payment, until they could determine whose money it was. We did not make the payment until they could come together. Q. What knowledge did you have concerning the controversy? A. We received a letter from Mr. Torosian, who is our buyer and who made this contract, not to pay Mr. Fewell any money. Now, whether that letter came before Mr. Fewell came to the office the first time, I don't recall offhand for I was very busy at that time, but the first knowledge that I had of it, Fewell came into the office with a copy

of the contract and said that he had bought the grapes and was the owner of the grapes and was delivering under the contract. Q. And did you see Mr. Shamgochian also? A. I did not, not until after that for several days. Q. And what was said by Mr. Shamgochian when he came down? A. I don't recall, just what there was to it. I think he told me something about the grapes being his son's or something. Q. Did he ask for payment? A. He did not; I don't think he asked for payment. I told him that if he and Fewell would get together, we would make out a joint check to them, if they would settle their own difficulties. That is what I told him.'' M. Shamgochian testified that he did not get in touch with Mr. Torosian, but he did say that Mr. Sublette told him: ''That gentleman sitting there, he told me that it is confused and that he was not going to pay any money to either one of us; he said he was going to make a joint check if we could settle it between ourselves. I said, 'Why don't you give us our part, and then pay the rest of it to him?' He said, 'No, we can't do that at all.' ''

Because of the testimony of Torosian and Sublette it is contended by appellants that there is no evidence to show that the refusal of Arakelian to pay plaintiff was due to some representation or act of defendants.

In view of the contention of appellants here, it is interesting to note that M. Shamgochian in his answer to plaintiff's complaint alleged that plaintiff had agreed to pay $600 (not $350) for the grapes, that he (as agent for H. Shamgochian) had demanded of plaintiff the payment of the additional sum of $250, which plaintiff refused to pay, and ''That upon plaintiff's refusal to pay said sum, defendant, as agent of said H. Shamgochian, advised the said K. Arakelian, Inc., Y. B. Torosian, and Agnes Torosian that there was due to H. Shamgochian out of and from the sale price of said grapes made to them or to the said K. Arakelian, Inc. the sum of $250 and requested the said K. Arakelian, Inc. under its contract with the said H. Shamgochian and under the contract by the said Y. B. Torosian, and Agnes Torosian with the said H. Shamgochian, to withhold said sum from the said plaintiff and to pay the same to this defendant for the use and benefit of the said H. Shamgochian, and to defendant as agent of said H. Shamgochian. That thereupon the said K. Arakelian, Inc., Y. B. Torosian, and Agnes Torosian, refused to pay any por-

tion of said sum of $1,178.56, or any other sum that they might owe for the said grapes, either to the plaintiff or to the defendant, as agent for the said H. Shamgochian.''

By stipulation of the parties H. Shamgochian was made a defendant with his father, and he filed an answer and cross-complaint, but denied therein that because of any representation by M. Shamgochian the buyers refused to pay to plaintiff the purchase price of the grapes. In his cross-complaint he sought to recover an additional $250 from plaintiff.

In view of the foregoing we cannot say that there was not sufficient evidence to justify the trial court's conclusion that the failure of Arakelian to pay plaintiff was due to claims interposed by defendants. Findings of fact are for the trial courts and it is within the province of such courts to draw inferences from the evidence and from the facts established by the evidence (*Estate of Barrow*, 27 Cal. App.2d 402, 405 [80 P.2d 1006] ; and if a finding of fact is based upon a reasonable inference it is not within the power of an appellate court to set it aside. (*Silva* v. *Gustine Creamery*, 217 Cal. 146, 149 [17 P.2d 699] ; *Tartar* v. *Industrial Acc. Com.*, 191 Cal. 703, 710 [218 P. 39] ; *Dorr* v. *Rehkopf*, 35 Cal.App.2d 366, 367 [95 P.2d 461] ; *Kossine* v. *Styliano*, 40 Cal.App.2d 721, 724 [105 P.2d 952].)

It is obvious that defendants were claiming an interest in the grapes after they had received full payment of the agreed price, that M. Shamgochian went to plaintiff and demanded more money before the grapes were fully harvested, that he refused to give plaintiff a release when he knew that Arakelian was holding up payment to plaintiff, that Torosian wrote Arakelian to hold up the payment, and that M. Shamgochian admitted that he went to Mr. Sublette and demanded that a part of the purchase price be paid to him; and, in view of the allegation in M. Shamgochian's answer that he as agent of his son, advised Arakelian, et al. to withhold payment of $250 to Fewell but to pay said amount to him, and that thereupon Arakelian refused to pay any portion of the purchase price to plaintiff, we cannot say that the trial court's conclusion, that by reason of the acts of defendants plaintiff sustained damages, is without adequate support.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.