[Civ. No. 19393. First Dist., Div. Two. May 31, 1961.]

LUIGI FARINA et al., Respondents, v. THOMAS BEVILACQUA et al., Appellants.

682

Allen H. Trant and Harry D. Miller for Appellants.

Emanuel P. Razeto, LeRoy A. Broun and Robert L. Lance-field for Respondents.

DRAPER, J.—The trial court's effort to rectify a particularly sharp bit of practice by defendants has led to this appeal.

Plaintiffs owned and farmed 10 acres of land along the easterly side of Channel Street, a dirt road in unincorporated territory of Alameda County. Defendants had been subdividing land west of Channel Street, and planned a shopping center directly across that street from plaintiffs' land. It is clear that widening and paving of Channel Street would enhance the value of the proposed shopping center. San Lorenzo Village Homes Association, an organization of property owners in surrounding areas, also was interested in the improvement of Channel Street. The association's manager, Sanford, asked the aid of defendants in securing the 60-foot right of way which all parties understood was required by the county, rather than the existing 20-foot width of Channel Street. Defendants agreed to contribute 20 feet of land from their property, provided a like width on the other side of the existing street could be obtained from plaintiffs. Defendants said that they would prefer not to negotiate a business transaction with plaintiffs, and asked Sanford to conduct the negotiations with plaintiffs on defendants' behalf. Sanford arranged for plaintiffs to sell the 20-foot strip, a total of .437 acres, for $6,000. There is evidence that its market value was substantially larger than this agreed price.

Plaintiffs first learned that defendants were paying the purchase price when Sanford asked that deed of the strip be made to defendants. Plaintiffs were then told that the county desired to have the conveyance to it in a single deed, and that it was for this reason that they were asked to convey their land to defendants. Plaintiffs then asked the written agreement of defendants to construct a "minimum fence" along plaintiffs' side of the road. This agreement was given, and plaintiffs deeded the 20-foot strip of land to defendants. Defendants arranged with the county that the roadway be but 58 feet in width, rather than the 60 feet which had been represented to plaintiffs. Defendants conveyed to the county only the land necessary for a roadway 58 feet wide. The 2 feet not deeded to the county immediately adjoined plain-

tiffs' land, and separated it from the street, which was paved by the county. Upon completion of the paving, defendants' counsel advised plaintiffs that they were trespassing upon defendants' land in going to and from the roadway over the 2-foot strip retained by defendants. Plaintiffs promptly gave notice of rescission, and tendered to defendants the proportion of $6,000 represented by the 2-foot strip retained by defendants. This action followed. The court decreed rescission and directed defendants to deed the strip to plaintiffs upon repayment to them of this proportion of the original price.

One defendant testified that he and his brother had at all times intended to deed to the county as little as possible of the land acquired from plaintiffs, retaining the remainder. It is conceded that at least at the time of plaintiffs' demand for a fence, defendants determined to withhold from the county a portion of the land deeded by plaintiffs. The record amply supports the trial court's finding that plaintiffs were never told of any such intention. It is also established that, after the street was paved and defendants' claim of trespass asserted, they offered to sell the 2-foot strip to plaintiffs for $7,500, $1,500 more than defendants had paid them for the entire width of 20 feet. Defendants concede that the narrow strip can be put to no use by them. Obviously, its only value to defendants lies in the price that plaintiffs' need for access to the street may compel them to pay for it, or in barring future development of plaintiffs' land.

Contrary to defendants' contention, their fraud is plain. The record fairly reeks of it, and we do not impose upon those who must purchase these reports by further detailing the facts supporting the finding of fraud. Equally lacking any semblance of merit is the contention that there is no evidence to support the finding that Sanford, although not a party to the fraud, was the duly authorized agent of defendants.

Defendants, however, contend further that partial rescission is not a remedy known to the law. Here the county, which was not a party to the fraud, now owns 18 of the 20 feet conveyed by plaintiffs to defendants, and has paved it. Obviously, the return of this land to plaintiffs cannot be decreed. Similarly, the decree requires restoration to defendants only of that proportion of the purchase price which is attributable to the 2 feet which can be returned. Thus, say defendants, the rescission is but partial and cannot be allowed.

Undoubtedly, the general rule is that rescission cannot be had unless the party demanding it can and does restore

the other party to status quo (*Joshua Tree T. Co.* v. *Joshua Tree L. Co.*, 100 Cal.App.2d 590, 596 [224 P.2d 85]). The rule, however, is based upon the theory that one cannot retain the portions of the contract which he deems desirable and repudiate the remainder (*Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, 275 [209 P.2d 581]). That theory has no application here. Plaintiffs do not seek to choose benefits to retain and obligations to shed. Rather, they seek to recover from the defrauding defendants all that remains salvageable of the original consideration given by plaintiffs, and to restore to defendants the full consideration given by the latter for that portion.

 Where a defendant has been guilty of fraud, "courts of equity are not so much concerned with decreeing that defendant receive back the identical property with which he parted . . . as they are in declaring that his nefarious practices shall result in no damage to the plaintiff" (*Arthur* v. *Graham*, 64 Cal.App. 608, 612 [222 P. 371]).

 Inability to restore the precise status quo is not invariably a bar to rescission (*Green* v. *Duvergey*, 146 Cal. 379 [80 P. 234]; *Steele* v. *Scott*, 192 Cal. 521 [221 P. 342]; *Lobdell* v. *Miller*, 114 Cal.App.2d 328 [250 P.2d 357]; *Estate of Barrow*, 27 Cal.App.2d 402 [80 P.2d 1006]; *Mosteller* v. *Braham*, 90 Cal.App. 715 [266 P. 367]). We do not suggest that any of these cases presents a fact situation precisely comparable to that before us. They do, however, establish that in aggravated situations equity is not powerless to effect a fair result even though exact restoration of the prior condition of the parties is impossible.

 Under the rule that for every wrong there is a remedy (Civ. Code, § 3523), courts of equity may invoke new methods of relief for new types of wrongs (4 Witkin, Summary of California Law, p. 2788). The peculiar circumstances of this case cry aloud for the invocation of this means of easing the normally valid restrictions upon the remedy of rescision.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 26, 1961.