[Civ. No. 33652. Second Dist., Div. Five. Mar. 6, 1970.]

SIGMUND SNELSON et al., Plaintiffs and Respondents, v.
ONDULANDO HIGHLANDS CORPORATION et al.,
Defendants and Appellants.

**248**

## Counsel

Halde, Barrymore & Stevens and Carroll Barrymore for Defendants and Appellants.

Nordman, Cormany, Hair & Compton, Ralph L. Cormany, Norman F. Montrose and Larry L. Hines for Plaintiffs and Respondents.

## OPINION

**AISO, J.**—Defendants Howard Miller Ferguson, Clifford Kolhass,[1] Ferguson Realty, Inc., a corporation, and Ondulando Highlands Corporation, a corporation, appeal from a judgment granting plaintiffs Sigmund Snelson and Ann E. Snelson, husband and wife, rescission of their purchase of residential property from defendant Ondulando Highlands Corporation, and awarding said plaintiffs monetary damages and costs of suit, jointly and severally, against all four defendants.

Plaintiffs brought this action against defendants Ondulando Highlands Corporation (hereafter "Ondulando"), Ferguson, Kolhass, and Does I through XII. Ferguson Realty, Inc., a corporation (hereafter "Ferguson Realty") was served subsequently as defendant Doe I. The complaint set forth eight separate counts upon the following theories: rescission on fraudulent misrepresentation, negligence in design and development of the property, strict liability for defective design and manufacture, breach of warranties, failure of consideration, and mistake resulting in damages.

Pursuant to stipulation of counsel, the trial court ordered the rescission count "bifurcated" from the other causes of action and tried first before a court sitting without a jury. It was further stipulated that if rescission were granted to plaintiffs, they would then dismiss their other remaining causes of action.

### I.

The facts stated in the light most favorable to the findings of the trial court (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157]; cf. *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 306 [81 Cal. Rptr. 855, 461 P.2d 39]) are as follows:

In October or November 1964 plaintiffs commenced negotiations for the purchase of certain real property improved with a residential house located in Ondulando Highlands, Ventura, California, commonly known as 1062 Via Cielito (legal description: Lot 238 of Tract 1435). Sigmund Snelson (hereafter "Snelson") discussed the purchase of the home and lot with Kolhass and Ferguson. Kolhass represented himself to be the sales manager of the tract for Ondulando and introduced Ferguson as president of Ondulando. In Ferguson's presence, plaintiff inquired of Kolhass whether or not there was any fill on the particular lot in which plaintiff was interested. Kolhass replied that he was sure there was no fill on the lot but that he had maps which plaintiff could look at to confirm that fact. Throughout the trial

---

[1]The name appears variously as Kolhass, Kolhaas, and Kolhaus in the record, but it appears that only one and the same individual is intended.

the term "cut" lot was employed to refer to land whose original level was higher than that desired for the final pad, requiring that the land be cut down to the desired elevation. On the other hand, the term "fill" lot was used to indicate land whose original level was lower than that desired for the final pad, requiring that fill material be added to bring the land up to the desired elevation.

Grading and engineering maps and reports of the property in question were provided by Kolhass for Snelson's study. These maps showed the lot to be cut rather than fill. Snelson testified that he relied on both the ·oral and documentary representations that the lot was cut in making his decision to buy the property. He was not interested in buying a lot that had on it any fill whatsoever, and would not have purchased the lot in question if he had been apprised of its having a fill.

In early December 1964 plaintiffs entered into an escrow agreement with Ondulando for the purchase of the real property improved with the residential home. The total purchase price for the property was $30,000. Plaintiffs made a down payment of $4,800 in cash and signed a $25,200 promissory note naming California Federal Savings & Loan Association‘ as payee. Defendant Ondulando executed a "Corporation Grant Deed" to plaintiffs as grantees, and plaintiffs executed a first deed of trust, securing the $25,200 note, naming California Federal Savings & Loan (hereafter "California Federal") as the beneficiary. Ondulando authorized the escrow to pay out of funds becoming payable to it a "Demand for partial release of the loan of record in favor of California Federal" and a commission of $1,000 to Ferguson Realty. The amount of the demand for partial release of the loan in favor of California Federal is not disclosed. Plaintiffs moved onto· the property in January 1965. Escrow closed around February 10, 1965. Plaintiffs had made all of the $196 monthly payments on the note apparently up to April 9, 1968, the date of the findings.

Between October and December 1965 there was a substantial amount of rain in Ventura County. On or about December 30, 1965, plaintiffs observed that after the rains a large landslide occurred on the edge of their lot.

Expert testimony disclosed that the lot purchased by plaintiffs was not cut, but in fact contained fill material and that the landslide would not have occurred had the lot been cut.

Plaintiffs' attorneys by letter dated January 24, 1966, addressed to Ondulando (attention of defendant Ferguson) gave notice of rescission, tendered possession of the property with improvements, and demanded reimburse-

ment for sums expended on the house and property, for the down payment, closing costs, monthly payments on the note, and for improvements.

In the interest of avoiding repetition, other facts will be related where pertinent to the particular issue discussed below.

## II.

While defendants raise the question under several headings of their brief, their first major contention is that the evidence is insufficient to sustain the findings of fact necessary to support a rescission on the ground of fraud.

 "It is now settled in California that where the seller [of real property] knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.] Failure of the seller to fulfill such duty of disclosure constitutes actual fraud. [Citations.]" (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 735-736 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].) Here, the court went even further and found affirmative representations that the land was cut, rather than fill. "A misrepresentation or concealment of the known fact of a fill in a lot sold to another constitutes material inducement which works fraud upon the buyer, who is ignorant of the fact. [Citations.]" (*Buist* v. *C. Dudley De Velbiss Corp.* (1960) 182 Cal.App.2d 325, 331 [6 Cal.Rptr. 259].) Affirmative representation that land is "cut" when in fact it is on a "fill" constitutes actionable fraud for either damages or rescission. (*Buist* v. *C. Dudley De Velbiss Corp.* (1960) *supra,* at page 330; *Burkett* v. *J. A. Thompson & Son* (1957) 150 Cal.App.2d 523, 527 [310 P.2d 56]; *Tatham* v. *Pattison* (1952) 112 Cal.App.2d 18, 21 [245 P.2d 668].)

It is also familiar law that an appellate court will not disturb a finding or a verdict if it finds the evidence in support thereof in conflict. "The presumption is in favor of the judgment, and the appellate court must consider the evidence in the light most favorable to the prevailing party. All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict" (*Cunningham* v. *Simpson* (1969) *supra,* 1 Cal.3d 301, 306) or the findings (*Bancroft-Whitney Co.* v. *McHugh* (1913) *supra,* 166 Cal. 140, 142). This rule was applied in *Buist, Burkett,* and *Tatham* cited above.

There can be little dispute with the court's finding the improved residential property here involved to have been a filled lot; it had been "undercut"

in the course of cutting so that the level of the land was raised by filling to achieve the desired construction pad level.

■ Finding No. 6 that defendants made oral and documentary representations that the property was a cut lot, not subject to earth movement, geologically stable, and one with which there would be no trouble with movement, slippage, slide or collapse of earth, finds support in the evidence. Defendants Kolhass and Ferguson indicated to Snelson that they were selling to plaintiffs an all cut non-fill property. Kolhass reinforced his oral representation by providing maps and reports to Snelson, which maps and reports showed the lot to be cut.

Defendant Kolhass was working for the Ferguson Realty which was the selling agent for Ondulando. Ferguson was the president of both Ondulando and Ferguson Realty. Kolhass made oral representations to Snelson in Ferguson's presence. Kolhass also testified that he was working for defendant Ferguson and that he was present on the tract premises during the entire period in which the lot in question was graded and developed. It may be inferred that Kolhass knew from watching the operations that the lot was fill and not cut.

Plaintiffs relied upon the oral and documentary representations and would not have purchased the lot but for such representations. Although Snelson was a geologist for oil companies, he was not an expert in soils engineering as it pertained to subdivision grading work. Surface observations would not have revealed whether the land was cut or fill. The documentary materials furnished to him gave him no notice of the fill. ■ " 'An independent investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance.' " (*Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 261 [73 Cal.Rptr. 127].)

■ The evidence is thus adequate to support the findings which undergird the judgment granting plaintiffs rescission of their purchase of the property from Ondulando upon the ground of fraudulent misrepresentation.

### III.

■ Defendants Ferguson, Kolhass, and Ferguson Realty next contend that the court should have granted their motion for a nonsuit as to the rescission cause of action. They first attack Finding 1 asserting that insofar as it finds that these particular defendants were acting "for themselves as principals" as well as agents of Ondulando and of each other, it totally lacks

evidentiary support. We agree. The uncontradicted evidence establishes defendant Ondulando to have been the vendor and principal on the contract to sell and that the other appealing defendants were only agents of Ondulando. That being so, they contend, they were entitled to a nonsuit, citing authority holding that where an agent of the vendor is not a party to the contract he is entitled to a nonsuit in an action for rescission. (E.g. *Leavens* v. *Sharp* (1944) 66 Cal.App.2d 425, 428 [152 P.2d 460]; *Mahoney* v. *Felkins* (1958) 162 Cal.App.2d 114, 116 [327 P.2d 911]; 50 Cal.Jur.2d, Vendor and Purchaser, § 501, p. 641.) However, the effect of section 1692 of the Civil Code added in 1961 (Stats. 1961, ch. 589, § 3; *Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906, 912-913 [42 Cal.Rptr. 366]) upon the recommendation of the Law Revision Commission must be considered.

The portion of section 1692 pertinent to the dispute here reads: "If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances. [¶] A claim for damages is not inconsistent with a claim for relief based on rescission. The *aggrieved party shall be awarded complete relief,* including restitution of benefits, if any, conferred by him as a result of the transaction *and any consequential damages to which he is entitled;* but such relief shall not include duplicate or inconsistent items of recovery. . . ." (Italics added.)

The Law Revision Commission in recommending adoption of section 1692 stated, among other things, "6. To dispel any doubt concerning the scope of relief that may be given in the action to enforce rescission, the statute should also indicate that the court may award consequential damages as well as a restoration of any consideration that has been given. The court should also be given the specific authority to render a conditional judgment in appropriate cases or otherwise adjust the equities between the parties." (3 Cal. Law Revision Com. Rep. (September 1961) pp. D-7 to D-8.)

The amount of $4,288.50 which plaintiffs paid for improvements of the property subsequent to their taking possession is a part of the consequential damage to which plaintiffs are entitled upon a rescission. (Cf. *Buist* v. *C. Dudley De Velbiss Corp.* (1960) *supra,* 182 Cal.App.2d 325, 334, 336.) The same is true of payments made on the note to California Federal. The judgment insofar as it awards plaintiffs the sum of $9,088.50 directly appears to be a total of the $4,288.50 and the down payment of $4,800. We have been unable to find in the record the disposition of the $196

monthly payments (or the total amount thereof),[2] and the $467.05 closing costs of the original escrow. Regardless of the equities between the defendants *inter se,* if the innocent plaintiffs are to be restored to their *status quo ante* they must be reimbursed for these items of consequential damages. It would appear not improper to hold all of the guilty defendants (who would be liable in an action for damages) jointly and severally liable on these damages as an ancillary remedy to the principal remedy of rescission restoring plaintiffs to their *status quo ante.*[3] Defendants Ferguson, Kolhass, and Ferguson Realty consequently were not entitled to a nonsuit.

## IV.

The next question to be considered is whether the trial court was correct in its conclusion that California Federal was neither a necessary nor an indispensable party to this action. The record discloses that both plaintiffs and defendants had the opportunity of joining California Federal as a party to the action as the beneficiary under the purchase money trust deed encumbering the title to the property. However, each side tried to maneuver the other into undertaking the necessary procedural action. California Federal had notice of this action, having been subpoenaed to produce certain documents in its possession, and it could have asked permission to intervene, but chose not to do so. ■ As long as the court in the exercise of its equitable powers could devise a decree granting plaintiffs rescission without infringing upon the legal rights of California Federal, the latter was not an indispensable party, although the difficulties of drafting an appropriate rescission judgment would have been alleviated materially if California Federal had been made a party. 'A person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be inequitably affected or jeopardized by a judgment rendered between the parties." (Code Civ. Proc., § 389, 1st par.; see also: *Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 521 [106 P.2d 879]; *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574, 583 [283 P.2d 704].)

In this connection, it is of interest to note that plaintiffs argued in the court below that California Federal was not an indispensable party because

[2]The only finding is: "[S]ince February 17, 1965, plaintiffs have made each and every monthly installment of $196.00 to California Federal Savings & Loan Association. . . ."

[3]In the exercise of equitable powers, the court would be justified in ordering all defendants jointly and severally liable to keep plaintiffs free, clear, and harmless from any demands from California Federal on the note which they executed. (See discussion under V below.)

no deficiency judgment could be obtained by that lender against plaintiffs since the trust deed in favor of California Federal was a purchase money trust deed. (Code Civ. Proc., § 580b.)

Defendants also complain: "Finding 4 and Conclusion of Law 5 stating that California Federal Savings & Loan did not become involved in the production, control and supervision of the construction of the entire housing development known as Ondulando Highlands [are] completely unnecessary to any matter or issue raised in the case or decided in the case." We construe the finding and conclusion of which the foregoing was a part as being only a finding that California Federal was not a necessary or indispensable party to this case and a conclusion that the judgment rendered herein shall not in any way affect California Federal's rights as holder of the note for $25,200 (original amount) secured by the trust deed of which it is the beneficiary. Anything beyond that is deemed surplusage. ▮ An unnecessary finding does not impair the sufficiency of findings made (*Employers' Liab. Assur. Corp.* v. *Industrial Acc. Com.* (1918) 177 Cal. 771, 777 [171 P. 935]), nor does the inclusion of matters that may be rejected as surplusage render defective a finding otherwise proper. (*Canadian Indem. Co.* v. *Motors Ins. Corp.* (1964) 224 Cal.App.2d 8, 17 [36 Cal.Rptr. 159]; *Morris* v. *Turley* (1928) 94 Cal.App. 691, 695 [271 P. 916].) ▮ Whether the court had jurisdiction to render a judgment of rescission in this case depended upon whether California Federal was an indispensable party. Finding 4 and conclusion 5 were at least pertinent to this issue. Although we disagree that California Federal was not a necessary party to the action, we find no error in the finding that it was not an indispensable party.

### V.

Finally, defendants object to the following portion of the judgment entered by the trial court:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiffs herein deposit into escrow with Title Insurance and Trust Company, Ventura, California, a grant deed naming all of the defendants herein as equal grantees over the real property which is the subject of this action and is more particularly described as follows:

> Lot 238, Tract 1435, as recorded in Book 35, Pages 76 through 91 of Maps, in the office of the County Recorder of Ventura County, California.

> This parcel of real property is commonly known as 1062 Via Cielito, County of Ventura, California.

"The real property shall be conveyed by plaintiffs free and clear of all

encumbrances save a first deed of trust designating California Federal Savings & Loan Association as the beneficiary thereon while taxes and insurance are to be prorated as of the date of close of escrow. Concurrently with such deposit by the plaintiffs herein, the defendants herein, and each of them, jointly and severally, are ordered and decreed to deposit into escrow at Title Insurance & Trust Company, Ventura, California, the sum $24,252.44, to the credit of California Federal Savings & Loan Association, such sum being the amount which the first deed of trust held by California Federal Savings & Loan Association secures on the real property. Plaintiffs are to pay for the policy of Title Insurance and one-half (½) of the normal escrow charges and the defendants herein are to pay for all recording costs and one-half (½) of the normal escrow charges. In the event that the defendants herein fail to deposit such sum into escrow as ordered, execution may issue in favor of the plaintiffs herein to obtain such sum and any funds collected in this fashion in excess of the $9,088.50 awarded directly to the plaintiffs herein (together with interest and $202.35 court costs), are to be turned over by the plaintiffs to California Federal Savings & Loan Association. It is further ordered that the escrow hereinbefore described shall close within sixty (60) days from and after the entry of this judgment."

 If the objectives of a rescission judgment can be accomplished by a quitclaim deed, such a deed would be preferable to a grant deed which carries certain warranties. (Civ. Code, § 1113.) The result which the trial court sought to accomplish was to preserve California Federal's rights under the trust deed, but to have plaintiffs convey back a title otherwise unencumbered to Ondulando. While we perceive no objection per se to the use of a grant deed instead of a quitclaim deed under these circumstances, care should be exercised so that plaintiffs will not be saddled with unnecessary warranties on their part. However, we do not see why an escrow is necessary if the requisite action by the respective parties to restore plaintiffs to their *status quo ante* can be effected under the direct supervision of the court. Since the vendor was Ondulando, we likewise see no reason why defendants other than Ondulando should be named as grantees in the deed which plaintiffs are to execute and deliver.

Defendants complain that there is no evidence that the unpaid balance on the purchase money note was $24,252.44 on the date of the judgment. The clerk's transcript reflects, however, that on the March 29, 1968, hearing on defendants' objections to the proposed findings and conclusions, "Respective counsel stipulate[d] that the amount of the balance due on [the] note is $24,300.00." Although the record does not reflect how the trial court arrived at the figure of $24,252.44 in its judgment dated and entered April 15, 1968, because there is no direct evidence of the rate of interest payable on the

note,[4] the discrepancy in the amount was one in defendants' favor. If the sole objection were to the amount, defendants' objections could be overlooked. However, their objections go further. They object to the portion of the judgment ordering them to jointly and severally pay the sum of $24,252.44, purporting to be the unpaid balance on the note secured by trust deed. It is true that the deed of trust carries a provision which permits the holder of the note to declare due and payable the entire unpaid balance of the principal and interest on the note in the event the real property securing the note is sold or transferred.[5] It was probably the intention of the trial court to protect the plaintiffs (vendees) in the event California Federal should choose to exercise this option. However, this portion of the judgment places California Federal in a better position than that to which they are entitled.

 As between plaintiffs and defendants, plaintiffs should be protected from any further liability stemming from their execution of the purchase money note and trust deed in favor of California Federal. However, this trust deed being a purchase money trust deed, California Federal cannot obtain any monetary deficiency judgment against the plaintiffs. (Code Civ. Proc., § 580b.) The court could order defendant Ondulando to assume payments on the note so as to make Ondulando the primary debtor as between it and the plaintiffs (*Everts* v. *Matteson* (1942) 21 Cal.2d 437, 447 [132 P.2d 476]). But it is also the law that "a person buying property that is encumbered by a prior purchase money security device retains the 580b protection of the original mortgagor or trustor notwithstanding an express assumption of the indebtedness" (*Jackson* v. *Taylor* (1969) 272 Cal.App.2d 1, 5 [76 Cal.Rptr. 891]). So far as California Federal's rights are based on the note and trust deed, it can look only to the property and not to any personal deficiency judgment. For further protection of the plaintiffs, however, we see no obstacle to the court's ordering all defendants, jointly and severally, to hold plaintiffs free, clear, and harmless of any demands or claims by California Federal based on the note and trust deed. (Civ. Code, § 1692.)

 If the value of the real property is not what California Federal thought it to be because of any wrongful act on the part of defendants or any of them, then its relief in this respect is a matter for California Federal to enforce against the defendants directly. (See *American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611 [68 Cal.Rptr. 453, 440 P.2d 933].)[6] Con-

---

[4]Neither the note nor a beneficiary statement was put in evidence.

[5]"In the event of sale or transfer of all or any portion of the real property covered by this Deed of Trust, the entire balance of the principal and interest secured hereby shall, at the option of the holder hereof, become immediately due and payable. If the option is not exercised, a reasonable transfer fee shall be paid. . . ."

[6]In fact, counsel informed the court at time of oral argument that California Federal does have such a suit pending against the vendors at the present time.

sequently, any judgment requiring the defendants or any of them to pay up the complete unpaid balance of principal and interest on the note is not proper in this action.

We see no impropriety in ordering defendants, jointly and severally, to reimburse plaintiffs for the $4,800 down payment, closing costs of $467.05, the $4,288.50 representing the incidental consequential damages, and the $196 monthly payments made on the note by plaintiffs as the result of defendants' misrepresentations.[7] True, the benefit of the down payment inured only to the vendor Ondulando and the monthly $196 payments made went to reduce the lien against the property; however, a joint and several judgment against all defendants would force the defendants other than Ondulando to assure payment of this monetary portion of the judgment in the event Ondulando fails to pay it. Otherwise, plaintiffs would not be made whole.

The objective of the judgment is, of course, to effect a restoration of the plaintiffs to their *status quo ante* within the limits possible without disturbing the rights of California Federal as holders of the note and trust deed on the real property involved. In an action predicated on fraud, the fact that the parties cannot be restored to the exact *status quo ante* will not prevent a court of equity from granting rescission, especially in the light of section 1692 of the Civil Code. Exercising its equitable powers, the court can adjust the equities of the parties and grant such relief as will achieve substantial justice under the circumstances of the case presented to it. (Civ. Code, § 1692; *Farina* v. *Bevilacqua* (1961) 192 Cal.App.2d 681, 685 [13 Cal.Rptr. 791]; *Lobdell* v. *Miller* (1952) 114 Cal.App.2d 328, 344 [250 P.2d 357]; *Arthur* v. *Graham* (1923) 64 Cal.App. 608, 612 [222 P. 371].)

## VI.

The judgment is reversed with directions to the trial court to take only such action as is necessary (including the taking of additional evidence) to modify its findings, conclusions and judgment to conform with the views set forth in the opinion above; each party to bear its own costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied April 2, 1970, and the following opinion was then rendered:

---

[7]The trial court found that the "reasonable rental value of the property during the period of its use and occupancy by the plaintiffs which might be due and owing to the defendants herein is offset by interest on the $9,088.50 to which the plaintiffs would be entitled." Objection to this finding was made in the trial court, for ambiguity, but was not raised in this appeal. Were the $196 monthly payments applied to offset rental value? The record does not enlighten us.

**THE COURT.**—Defendants raise for the first time on their petition for rehearing that the defendants other than the vendor, Ondulando Highlands Corporation, were entitled to a jury trial before being held liable for damages. The contention does not justify a rehearing for the following reasons:

1. In marked contrast to the factual situation in *Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906 [42 Cal.Rptr. 366], the gravamen of the cause of action before the trial court and this court was primarily a proceeding in equity to adjudicate a rescission in the face of defendants' denial of the existence of a basis for rescission. As pointed out in the principal opinion, the awarding of damages was ancillary to the equitable disposition of the cause. ▮ The incidental award of monetary damages by a court in the exercise of its equitable jurisdiction does not convert the proceeding into a legal action. (Cf. *Crouser* v. *Boice* (1942) 51 Cal. App.2d 198, 203 [124 P.2d 358].)

▮ 2. One may not permit an issue to be tried as an equity matter in the trial court without objection and then claim on appeal that it should have been tried as a law question on the legal side of the court. (*Kittle* v. *Lang* (1951) 107 Cal.App.2d 604, 609-611 [237 P.2d 673]; cf. also: *Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361, 377 [273 P.2d 897]; *Simons* v. *Bedell* (1898) 122 Cal. 341, 346 [55 P. 3, 68 Am.St.Rep. 35].) ▮ Moreover, in the instant case, by stipulation of counsel the rescission cause of action was "bifurcated" from the rest of the case and tried to a court sitting without a jury as an equity court; there was no reservation as to the right of a jury trial in the event damages should be awarded; nor was the question then raised. There was thus a waiver of the issue now sought to be belatedly raised. ▮ Even a constitutional right generally must be raised at the trial level to preserve the issue on appeal. (See, e.g., *People* v. *Mabry* (1969) 71 Cal.2d 430, 441-442 [78 Cal.Rptr. 655, 455 P.2d 759] [claimed violation of Fourth Amendment]; *People* v. *Tolbert* (1969) 70 Cal.2d 790, 804 [76 Cal.Rptr. 445, 452 P.2d 661] [search warrant failing to comply with Fourth Amendment]; *In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296] [*Miranda* rights]; *People* v. *Fain* (1969) 70 Cal.2d 588, 601, fn. 7 [75 Cal.Rptr. 633, 451 P.2d 65] [*Miranda* rights].) ▮ Having failed to raise this jury trial issue either at the trial level or in their opening or closing briefs filed with this court, the defendants are foreclosed from raising it at this late stage of the proceedings before us.

Appellants' petition for a hearing by the Supreme Court was denied May 6, 1970.