Filed 10/7/13  Cantley v. Wecker CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BECKETT CANTLEY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>JAMES WECKER II et al.,<br><br>    Defendants and Respondents. | B241438<br><br>(Los Angeles County<br>Super. Ct. No. SS019407) |

APPEAL from an order of the Superior Court of Los Angeles County, Linda K. Lefkowitz, Judge.  Affirmed.

Levinson Arshonsky & Kurtz, James S. Cooper and Jason Jarvis for Plaintiffs and Appellants.

Greenberg Glusker Fields Claman & Machtinger, and Norman H. Levine for Defendants and Respondents.

_____

The trial court entered a judgment confirming an arbitrator's award for rescission of a contract for the purchase and sale of real property, with consequential damages and attorney's fees and costs.[1]  The seller appealed, and we affirmed the judgment. (*Cantley v. Wecker* (Aug. 1, 2011, B226621) [nonpub. opn.] (*Cantley I*).)  Later, the trial court entered an order declaring the judgment has been satisfied because the buyer sold the real property to third party, making it impossible for the buyer and seller to undo their real property transaction and return to their original positions.  (See Code Civ. Proc., § 724.010 et seq.)  Now, the buyer appeals.  We affirm the trial court's order.

## FACTS

In 2007, James Wecker and David Wilson (collectively Wecker) sold a single family residential property on Queens Court north of Sunset Boulevard to Beckett and Kirsten Cantley (the Cantleys).  In 2009, the Cantleys served Wecker with a notice of rescission based on an alleged failure to disclose that a part of a walkway and stairs from the street to the residence on the Queens Court property encroached across a boundary line and rested on land owned by an adjoining neighbor.  The encroachment measured roughly 78 feet long and averaged about 1.5 feet in width.

In June 2009, the Cantleys submitted a statement of claim in arbitration under the terms of the purchase and sale agreement with Wecker.  The arbitrator found that Wecker negligently failed to make a material disclosure – the encroachment – in the course of the sale of the Queens Court property to the Cantleys.  The arbitrator ruled that the negligent misrepresentation justified the remedy of rescission.  Wecker advised the arbitrator that she had made a mathematical error in the measuring the extent of the encroachment. The arbitrator conceded a mathematical error, corrected her miscalculation, and then

---

[1]     We highlight that the trial court entered a judgment *confirming an arbitrator's award*.  The court did not enter judgment for rescission upon trial of a case in equity in the trial court.  The court did not exercise its equitable powers in that it did not weigh the parties' respective benefits and hardships and then enter a "fair judgment" for rescission that balanced the equities of the parties.  The court confirmed an arbitrator's award for rescission of the contract between the parties.  To the extent any balancing of the equities occurred, the arbitrator did the balancing in issuing her arbitration award.

issued a final award. However, she ruled that she could not change her original conclusion as to materiality of the encroachment, notwithstanding her initial miscalculation.

In 2010, the Cantleys filed a petition in the trial court to confirm the arbitrator's award. Wecker filed a petition to vacate the arbitrator's award. The trial court confirmed the arbitrator's award. On July 30, 2010, the trial court entered judgment confirming the arbitrator's award. The judgment included these provisions:

"The purchase and sale of the [Queens Court] real property . . . and the . . . California Residential Purchase Agreement and Joint Escrow Instructions between the Cantleys and Wecker . . . for the purchase of such property is ordered rescinded in accordance with Civil Code section 1691 and restitution and consequential damages ordered paid upon the following terms and conditions:

"(a) Return the entire purchase price of [$2.495 million], less [$15,610 for a credit in lieu of making certain repairs] to the Cantleys; or, alternatively,

"(b) Pay the Cantleys the sum of [$516,189.07] less [$15,610] and assume the existing Bank of America first mortgage of [$1.996 million].

"(c) Concurrent with the performance of either 1(a) or 1(b) above, [Wecker] shall also pay to the Cantleys the following consequential damages: [$418,636.97 for escrow charges, mortgage interest, property taxes, landscaping and pool costs, improvements and insurance], less a credit for the fair rental value of the property in the sum of [$327,000] or a net monetary recovery of consequential damages . . . of [$91,636.97] for the time period described in the Arbitration Award plus attorney's fees and costs awarded to the Cantleys in the Arbitration Award in the sum of [$114,589.80] for fees and [$27,538.56] for costs, including the fees of the Arbitrator, for a total of attorney's fees and costs incurred in the Arbitration in the amount of [$142,128.36].

"(d) Concurrent with the performance of either 1(a) or (b) and 1(c) above, the Cantleys shall deliver to [Wecker] a grant deed for the Property free of all liens [and] real property taxes subject to normal prorations based upon date of recordation of deed."

Wecker filed an appeal. While the appeal was pending in our court, the Cantleys filed a motion for a determination of their "performance" under the judgment confirming the arbitrator's award. The Cantleys' motion asserted they had tendered the Queens Court property to Wecker, and that he had indicated he did not have the funds to return their purchase money. The Cantleys requested an order from the trial court authorizing a "short sale" of the Queens Court property, and "excusing" or "forgiving" the Cantleys from any further "restitution requirements" under the terms of the judgment. On December 16, 2010, the trial court denied the Cantley's motion. The Cantleys thereafter sold the Queens Court property without the imprimatur of a trial court order.

In the summer of 2011, we affirmed the judgment confirming the arbitrator's award. (*Cantley I, supra,* B226621.) After the remittitur issued, Wecker filed a motion in the trial court to vacate the judgment confirming the arbitration award, or to deem it satisfied on the grounds that the Cantleys relinquished the right to rescind the sale of the property by selling the property.

The trial court denied Wecker's motion without prejudice. The court ruled that Wecker could not prevail on his request to vacate the judgment because there were no grounds to vacate the underlying arbitrator's award under Code of Civil Procedure section 1286.2. Further, the court ruled that Wecker could not obtain a declaration that the judgment was satisfied because he had not followed the procedures prescribed in Code of Civil Procedure section 724.050, namely, he had not served the Cantleys with a written demand for an acknowledgement of satisfaction of the judgment. In a part of the order which we construe as largely advisory, the court further stated that the Cantleys had affirmed the underlying purchase and sale transaction with Wecker by selling the Queens Court property to a third party, and that their actions were inconsistent with the judgment confirming the arbitrator's award for rescission.

4

On February 24, 2012, Wecker filed a motion for a declaration that the judgment confirming the arbitrator's award had been satisfied. Again, Wecker argued that, by selling the Queens Court property, the Cantleys had relinquished all of their rights under the judgment. He indicated he had demanded an acknowledgement of satisfaction of judgment from the Cantleys, and they had declined to provide the same.

On May 15, 2012, the court entered an order granting Wecker's motion to declare the judgment has been satisfied. The trial court ruled that, by selling the property, the Cantleys had affirmed the underlying purchase and sale agreement with Wecker, and taken action inconsistent with the judgment for rescission. The trial court ruled that the Cantleys' conduct was so inconsistent with their intent to enforce their rights under the judgment against Wecker that those rights were relinquished. In short, the court adopted and restated its prior advisory conclusions in its order of January 17, 2012. The court ruled that the judgment had been satisfied and that the Cantleys could recover no further relief under the judgment.[2]

The Cantleys filed a timely notice of appeal. (See *McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1398 [an order granting a motion to enter satisfaction of a previously entered judgment is appealable].)

## DISCUSSION

### I.    Satisfaction of Judgment — Rescission

The Cantleys assert they fulfilled their obligations under the judgment by tendering the Queens Court property to Wecker, and that Wecker failed to fulfill his obligations when he told them that he did not have the money to accomplish rescission of the sale of the property. The judgment affirming the arbitration award required the Cantleys to deed the property back to Wecker forthwith, and for Wecker, forthwith, either to restore the purchase price ($2.495 million) or to assume the loan and mortgage and pay

---

[2]    At the same time, the trial court denied Wecker's request that the Cantley's return $57,466.25 which they had recovered under a levy before they sold the Queens Court property, and denied Wecker's request to recover attorney's fees. Those parts of the trial court's order are not challenged by Wecker on appeal.

5

roughly $500,000 to the Cantleys. The Cantleys contend that, having tendered the property, they did not act improperly in selling the property. They argue the order declaring the judgment satisfied must be reversed, and suggest that the matter should be remanded to the trial court with directions "to use its equitable powers to achieve a just remedy." They ask: "[W]here rescission is now impossible how can the injured party be made whole?" The unstated but plain implication in the position taken by the Cantleys is that they should be allowed to convert their judgment for rescission into a judgment for money damages, such that they ought to be allowed to recover money reflecting their loss when they did the short sale of the property to avoid foreclosure. We are not persuaded by the Cantleys' argument that this requires reversal of the trial court's order declaring the judgment has been satisfied.[3]

It is long-settled that rescission requires each party to a contract to restore to the other everything of value received under the contract. (See *Viterbi v. Wasserman* (2011) 191 Cal.App.4th 927, 935.) The Cantleys' statement of claim initiating the arbitration sought only rescission of their purchase transaction with Wecker for the Queens Court property; they did not include a claim for damages, other than consequential damages attendant with rescission.[4] A buyer cannot return the object of a transaction when he or she has sold the object of the transaction, and, thus, in such a situation rescission of the transaction is impossible. (*Lupton v. Domestic Utilities Mfg. Co*. (1916) 173 Cal. 415, 422.) Ordinarily, where rescission is not possible because the buyer has sold the object of a transaction, he or she must resort to an action for damages. (*Ibid*.) The Cantley's sought rescission, obtained an arbitrator's award for rescission, and thereafter obtained a

---

[3]     Although not critical, we wonder about the use of the nomenclature "satisfaction" of judgment as to rescission. Regardless, the substance of the trial court's order effectively extinguished the parties' respective rights and obligations concerning rescission of their real property transaction.

[4]     For example, the Cantleys did not seek the difference in the value of the Queens Court property with and without the encroachment; they unmistakably wanted to walk away completely from the property, rescinding their purchase and sale transaction with Wecker.

6

judgment confirming the arbitrator's award. The judgment for rescission involved in the current case was akin to a judgment for injunctive relief or specific performance, ordering the parties to undertake acts to undo their transaction.

As they did in the trial court, the Cantleys rely extensively on *Cameron v. Evans Securities Corp.* (1931) 119 Cal.App. 164 (*Cameron*) in support of their argument that the trial court should not have done what it did here. We find *Cameron* unhelpful in the circumstances presented in the current case. In *Cameron*, the plaintiff filed a complaint to rescind a written contract for purchase and sale of real property based on alleged fraud, and the trial court eventually entered a judgment in plaintiff's favor. (*Id*. at p. 167.) On appeal, the seller defendants and appellants *challenged the judgment* on various grounds. One of the attacks on the judgment involved the issue of the availability of rescission as a remedy. The *Cameron* court's discussion of this issue is as follows:

"Appellants . . . contend that by failing . . . to make the monthly payments on the trust deed in which the [lender] was beneficiary and by permitting the property to be sold by the holder of the trust deed, [plaintiff] had placed himself in a position where it was impossible for him to return the property should rescission be ordered. It appears, however, from the record herein that [plaintiff] made six monthly payments on account of the trust deed; that the last payment was made by him on February 15, 1928; that no payment was due at the time he gave written notice of rescission on February 29, 1928; that on February 29, 1928, he made to [the seller defendants and appellants] a formal offer to restore and tendered a deed to the property. Subdivision 2 of section 1691 of the Civil Code [since repealed] provides that the party rescinding must restore to the other party everything of value received by him under the contract or must offer to restore it upon condition that such party shall do likewise. *We know of no rule of law that imposes upon one who seeks to rescind a contract . . . , the duty of preserving the subject matter of the contract after notice of rescission and offer of restoration. The rule is that offer of restoration accompanied by prompt and proper notice to rescind is sufficient to entitle a complainant to the remedy of rescission.* (*Loaiza v. Superior Court* [(1890)] 85 Cal. 11 . . . ; *Green v. Duvergey* [(1905)] 146 Cal. 379 . . . .) In *Kelly v. Owens* [(1898)] 120

7

Cal. 502 . . . , relied upon by appellants, the Supreme Court expressly found that there was no valid offer of restoration even after the suit was brought." (*Cameron, supra*, 119 Cal.App. at pp. 172-173, italics added.)

The problem with applying *Cameron* in the current case is that *Cameron* does not address what a prevailing plaintiff's rights are vis-à-vis *enforcement and satisfaction of a valid judgment for rescission* after it has become impossible to accomplish rescission. We read nothing in *Cameron* to support the proposition implicitly argued by the Cantleys that a losing defendant may be compelled to return all or some of the purchase money for real property without the prevailing plaintiff reconveying the property.

The Cantleys did not ask the arbitrator to frame alternative, separate relief in the event rescission became impossible, and the trial court, in entering judgment confirming the arbitrator's award, could not expand the arbitrator's award. This being the context in which the parties and the trial court were constrained to act, and rescission now being impossible, we find that the trial court's decision to declare the judgment satisfied was appropriate insofar as any and all issues related to rescission are concerned. Thus, all aspects of the judgment concerning rescission, i.e., the parties' respective rights and obligations as to the exchange of deeds for purchase money related to the Queens Court property, are finished.

The Cantleys argue the trial court had the power to grant some equitable remedy, rather than declaring the judgment for rescission satisfied. They discuss a series of cases for the proposition that a court acting in an equity case may "adjust the equities," between the parties, even after a judgment has been entered. (See, e.g., *Padula v. Superior Court* (1965) 235 Cal.App.2d 567, 570 ["In an action for the rescission of a contract, the trial court, in the exercise of its equity jurisdiction, has the power to adjudicate all of the rights between the parties, within the subject of the litigation, and to adjust the equities between them."]; and see *Lesser & Sons v. Seymour* (1950) 35 Cal.2d 494, 500.) The Cantleys argue "equity is not powerless to affect a fair result even though exact restoration of the prior condition of the parties is impossible." (Quoting from *Farina v. Bevilacqua* (1961) 192 Cal.App.2d 681 at p. 685.) We agree in the abstract with these propositions, but we

8

are not persuaded that this means the trial court's order here must be reversed. As we noted above, the judgment entered here was a judgment confirming an arbitrator's award. We see nothing in either parties' briefs on appeal which supports the idea that the trial court could go outside the arbitrator's award, and exercise its equity powers to put in place a new and different judgment not based on the arbitrator's award, but based upon a balancing of the equities as they may now exist.

The Cantley's argue they are being penalized for making a reasonable decision to sell the Queens Court property after Wecker failed to perform his rescission obligations in accord with the terms of the judgment. They argue the trial court's decision to declare the judgment satisfied is "grossly inequitable" because this disregards the fact that it was Wecker who failed to perform his obligations necessary to accomplish rescission. There is some truth to their assertion. But, if the Cantleys are arguing that the trial court's equitable powers gave it the authority to convert the judgment on the arbitrator's award into a judgment in equity outside the arbitrator's award, and or into a judgment for money damages not awarded by the arbitrator, they do not offer any legal authority that the trial court had such power.

## II.     Satisfaction of Judgment — the Money Elements

As noted above, the arbitrator awarded "consequential damages" to the Cantleys reflecting the arbitrator's reasoning that they had incurred certain costs ($418,636.97) associated with living in the Queens Court property that they apparently would never have incurred had the deal with Wecker never occurred, less the fair market rental of the property over the time period they lived in the property (of $9,000 per month).[5] As we explained in *Cantley I, supra*, under the law of arbitration, it does not matter how the arbitrator reasoned out the award, or even if her decision was based on errors of fact or law; the only relevant examination was whether the arbitrator exceeded her powers in making the award, which we found she had not. When the trial court entered judgment confirming the arbitration award it calculated that $91,636.97 was owed by Wecker as

[5]     The arbitrator also awarded costs of $27,538.56 and attorney's fees in the amount of $114,589.80 to the Cantleys.

9

consequential damages. One issue in the satisfaction of judgment context presented in the current case is whether, when the trial court confirmed the arbitrator's award, the consequential damages of $91,636.97 was reduced to an independent, enforceable money judgment, or, alternatively, whether the money awarded was meant to be included as a component part of the remedy of rescission.

In declaring the judgment satisfied, the trial court interpreted the judgment which it entered upon the arbitrator's award as follows: "The judgment awarded [the Cantleys] rescission, restitution, and consequential damages. [Wecker was] required to either pay [the Cantleys] a total of $2,713,155.20 or pay $734,344.40 and assume the existing mortgage. Concurrent with [Wecker's] performance, [the Cantleys] were required to deliver to [Wecker] a grant deed for the property free of all liens." Because the purchase price of the property was $2.495 million, the trial court plainly interpreted the judgment that the court itself had entered to provide that the concurrent payment of the consequential damages awarded was a component part of rescission. Accordingly, because rescission has become impossible as explained above, i.e. there could be no delivery of a deed free of liens (the property no longer being owned by the Cantleys) in exchange for a payment of commanded amount of money, the consequential money damages do not have to be paid over by Wecker at his point.

This leaves the costs and attorney's fees of $142,128.36 awarded by the arbitrator and included in the subsequent judgment confirming the award. The trial court ruled this aspect of judgment satisfied above, and, for the reasons explained above, we agree. Here, the manner in which the judgment for rescission was written (and interpreted by the trial court) contemplated that the costs and attorney's fees would be paid over "concurrent" with the transfer of a grant deed free of liens. We find no error in the trial court's ruling that, by selling the property, the Cantleys effectively sold away their rights to all bases of recovery provided in the judgment for rescission.

10

**DISPOSITION**

The trial court's order dated May 15, 2012, declaring the judgment confirming the arbitrator's award satisfied, is affirmed. Each party to bear its own costs on appeal.

                                        BIGELOW, P. J.

We concur:


        FLIER, J.


        GRIMES, J.

11